**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. CHERYL AKIN, ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Case No. CIV-14-173-KEW | |
| ) | | |
| 1. ETS-LINDGREN, L.P., ) | ATTORNEY LIEN CLAIMED | |
| ) | JURY TRIAL DEMANDED | |
| Defendant. ) | | |

## COMPLAINT

**COMES NOW THE PLAINTIFF** and for her causes of action herein alleges:

## PARTIES

1. The Plaintiff is Cheryl Akin, an adult resident of Bryan County, Oklahoma.

2. The Defendant is ETS-LINDGREN, L.P., a company doing business in Bryan County, Oklahoma.

## JURISDICTION AND VENUE

3. Plaintiff's claims are for gender discrimination and retaliation after Plaintiff complained of gender discrimination in violation of Title VII, and the Oklahoma Anti-Discrimination Act (OADA). Also, for disability discrimination and retaliation after Plaintiff complained of disability discrimination, and requested accommodations in violation of the Americans with Disabilities Act (ADA) and the OADA. Plaintiff also claims retaliation after Plaintiff requested FMLA protected leave and interference with the FMLA in violation of the FMLA. Jurisdiction over the federal claims is vested in this Court under by 29 U.S.C. § 2617(a)(2), 42 U.S.C. § 12117(a), 42 U.S.C. §2000e-5(f)(1), and 28 U.S.C. § 1331. Because the state law claims arise out of the same core of facts, jurisdiction is vested over those claims under 28 U.S.C. § 1367(a).

4. All of the actions complained of occurred in Bryan County, Oklahoma and the Defendant may be served in that county. Bryan County is within the Eastern District

of the United States District Courts for Oklahoma wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

5. Defendant employed more than fifty (50) employees during at least twenty (20) weeks of each calendar year between 2012 and 2013 who worked within seventy- five (75) road miles of the location where Plaintiff worked. Accordingly, the Defendant is a covered employer under the FMLA, the ADA and Title VII. There is no minimum employee requirement to be a covered employer under the OADA.

6. Plaintiff began working for the Defendant as a Shipping Supervisor around January 2007.

7. The Plaintiff was involuntarily terminated around May 13, 2013.

8. The Plaintiff suffers from severe anxiety, an impairment which, without regard to the ameliorative effects of mitigating measures, substantially limits one or more major life activities and/or bodily functions including, but not limited to:

    A. Plaintiff would have significant difficulty breathing;

    B. Plaintiff would have significant difficulty communicating with others;

    C. Plaintiff would have significant difficulty sleeping and would be unable to sleep for more than a couple hours per night.

9. As a result of the limitations set out in Para. 8, above, Plaintiff suffers from a disability as defined by the ADA Amendments Act (ADAAA), 42 U.S.C. § 12102(1)(A), (2)(B), in that she suffers from a condition which materially impairs major life activities and bodily functions as defined by and/or is regarded as having such impairment as defined by 42 U.S.C. § 12102(1)(C), (3).

10. At the least, Defendant perceived Plaintiff as having a disability for reasons including that Plaintiff's supervisors commented that Plaintiff was incapable of performing her job with her medical condition.

11. The Plaintiff was supervised by Doug Bailey.

12. Beginning around 2010, Mr. Bailey would require Plaintiff to perform personal chores for him, including taking care of Mr. Bailey's dogs and performing tasks for Mr. Bailey's personal side-jobs. Mr. Bailey did not require males to perform such duties.

13. Beginning around June or July 2010 the Plaintiff began taking foster care classes in preparation for adopting a child.

14. Mr. Bailey became upset at the Plaintiff when he learned of Plaintiff's intent to adopt a child, telling the Plaintiff that being a single mother would ruin her life.

15. Thereafter, Plaintiff began being subjected to harassment at her office, including having animal feces placed in her desk and urine poured on her carpet.

16. Plaintiff reported this conduct to Mr. Bailey and explained that she felt she was being targeted because of her gender as the male employees had not been subjected to such harassment.

17. After Plaintiff's complaint to Mr. Bailey she was retaliated against including being required to work in the company's warehouse after everyone else was allowed to go home, and after the Defendant had turned off the lights and electricity in the warehouse.

18. Plaintiff filed an EEOC charge of discrimination around November 2013 for gender discrimination and retaliation.

19. Thereafter, the harassment became worse. For instance, Mr. Bailey and other supervisors began to accuse the Plaintiff of engaging in misconduct, which was actually attributable to other employees who had not been complaining of harassment and discrimination. Additionally, the Defendant began to discipline the Plaintiff for misconduct for which she was not responsible while refusing to discipline other employees who were responsible for such misconduct.

20. At least partially as a result of the harassment by the Defendant, the Plaintiff developed severe anxiety which resulted in her seeking time off work and other reasonable accommodations, including not having to be in a personal meeting alone with Mr. Bailey.

21. Around June 2012, Plaintiff was diagnosed with Acute Anxiety Disorder. Plaintiff reported the diagnosis to Mr. Bailey.

22. Plaintiff requested accommodations including occasional time off work if she were suffering from the anxiety, and the ability to attend meetings by way of a computer link in the same office. Additionally, because Mr. Bailey continued to retaliate against the Plaintiff, including near constant harassment such as yelling at and demeaning the Plaintiff in the presence of others. Plaintiff also requested that she no longer be required to be in the same room with Mr. Baily alone. Such requests were for reasonable accommodations under the ADA.

23. Around the end of June 2012 Plaintiff sought intermittent FMLA leave for her medical condition. Plaintiff did take off for her medical condition including around February 20, 2013.

24. Although Plaintiff was told by Melani Ivester (HR) that the intermittent FMLA leave was approved, Plaintiff suffered retaliation, including termination, for attempting to take such leave.

25. After Plaintiff's requests and complaints of discrimination, the Defendant's harassment increased. For instance, Plaintiff was denied a pay raise around October 2011 and October 2012, and began to receive poor performance evaluations, in addition to ultimately being terminated.

26. Plaintiff was terminated around May 13, 2013.

27. Reasons given for the termination include a failure to attend an in-person meeting and leaving work. These claimed termination reasons are pretextual and illegitimate

for several reasons, including that Plaintiff had been authorized to attend the meeting via computer link as an accommodation for her medical condition. Also, Plaintiff requested to leave work because she was suffering from severe anxiety and received permission to leave work as an accommodation for her medical condition and such leave would have been protected by the FMLA.

28. After Plaintiff's termination she sought medical treatment for her medical condition, including around September 4, 2013. Had the Plaintiff not been terminated she would have been entitled to utilize her rights under the FMLA, including using her FMLA to take such leave.

29. Defendant's termination of Plaintiff's employment interfered with Plaintiff's ability to take such FMLA leave.

30. At the least the Defendant's conduct was motivated by Plaintiff's gender, disability and/or her complaints about the discrimination and her requests for reasonable accommodation such that Plaintiff is protected under the mix-motive doctrine.

31. As a direct result of the Defendant's conduct, the Plaintiff has suffered lost wages (including back, present and front pay along with the value of benefits associated with such wages, and emotional distress/dignitary harm including sadness, embarrassment, frustration, anxiety and similar unpleasant emotions.

32. Plaintiff has exhausted her administrative remedies by timely filing EEOC charges of discrimination on November 20, 2012 and October 21, 2013. The EEOC issued Plaintiff her right to sue letter on April 11, 2014 for both charges as they were filed with the EEOC under the same charge number. Plaintiff received such letters thereafter. This complaint is timely filed within ninety (90) days of Plaintiff's receipt of her right to sue letters.

## COUNT I

For Plaintiff's first cause of action she incorporates the allegations set forth above and further provides that:

33. Discrimination on the basis of gender violates Title VII and the OADA.

34. Under this Count Plaintiff is entitled to compensation for her lost wages (past, present and future including the value of benefits associated with such wages), emotional distress/dignitary harm damages, attorney fees and costs and liquidated damages under the OADA.

35. Because the actions of the Defendant were willful, malicious or, at the least, in reckless disregard for Plaintiff's federally and state protected rights such that Plaintiff is entitled to an award of punitive damages under the federal claim.

## COUNT II

For Plaintiff's second cause of action she incorporates the allegations set forth above and further provides that:

36. Discrimination on the basis of a disability or perceived disability, and retaliation for Plaintiffs' requests for accommodation is contrary to the ADA and the OADA.

37. Refusal to offer an available reasonable accommodation such as time off work for treatment of Plaintiff's medical condition is a *per se* violation of the ADA.

38. Under this Count, Plaintiff is entitled to compensation for his lost wages (past, present and future including the value of benefits associated with such wages), emotional distress/dignitary harm damages, attorney fees and costs.  Plaintiff is entitled to liquidated damages under the state law claim.

39. Because the actions of the Defendant were willful, malicious or, at the least, in reckless disregard for Plaintiff's federally and state protected rights such that Plaintiff is entitled to an award of punitive damages under the federal claim.

## COUNT III

For Plaintiff's third cause of action she incorporates the allegations set forth above and further provides that:

40. Retaliation against the Plaintiff for Plaintiff's exercise of her rights under the FMLA, and interference with Plaintiff's utilization of FMLA leave, are both violations of the FMLA.

41. Defendant's actions were willful as defined by the FMLA.

42. As a result of such interference and/or retaliation Plaintiff is entitled to actual and equitable damages including lost wages (past, present and future and for the value benefits associated with such earnings), pre-judgment interest, attorney fees and costs.

43. Because the actions of the Defendant's actions were not taken in good faith, Plaintiff is entitled to an award of liquidated damages.

**WHEREFORE,** Plaintiff prays that she be granted judgment in her favor and against the Defendant on all of her claims and that this Court grant the Plaintiff all available compensatory damages, punitive damages, liquidated damages, pre- and post-judgment interest, costs, attorney's fees and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED THIS 6th DAY OF MAY, 2014**.

HAMMONS, GOWENS & HURST

s/ Amber L. Hurst
Mark E. Hammons, OBA No. 3784
Amber L. Hurst OBA No. 21231
HAMMONS, GOWENS & hurst
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: Amberh@hammonslaw.com
           Mark@hammonslaw.com
*Counsel for Plaintiff*
JURY TRIAL DEMANDED